**ROBERT R. HENSLER, ESQ.**
California State Bar No. 216165
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: robert_hensler@fd.org

Attorneys for Pedro De La Rosa-Soto

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PEDRO DE LA ROSA-SOTO,<br><br>Defendant. | Case No. 08CR2031-H<br><br>DATE: July 7, 2008<br>TIME: 2:00 p.m.<br><br>**NOTICE OF MOTIONS AND MOTIONS TO:**<br>**1) COMPEL DISCOVERY/**<br>**2) PRESERVE EVIDENCE**<br>**3) SUPPRESS STATEMENTS;**<br>**4) DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY; AND**<br>**5) GRANT LEAVE TO FILE FURTHER MOTIONS** |

TO: KAREN P. HEWITT, UNITED STATES ATTORNEY

**PLEASE TAKE NOTICE** that, on July 7, 2008, at 2:00 p.m. or as soon thereafter as counsel may be heard, the defendant, Pedro De La Rosa-Soto, by and through his counsel, Robert R. Henssler, Jr., and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

//

//

//

//

//

**MOTIONS**

The defendant, Pedro De La Rosa-Soto, by and through his attorneys, Robert R. Henssler, Jr., and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

1) Compel Discovery;
2) Preserve Evidence;
3) Suppress Statements;
4) Dismiss the Indictment Due to Misinstruction of the Grand Jury; and
5) Grant Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and all other materials that may come to this Court's attention at the time of the hearing on these motions.

Respectfully submitted,

DATED: May 23, 2008

/s/ Robert R. Hensler
**ROBERT R. HENSLER**
Federal Defenders of San Diego, Inc.
Attorneys for Pedro De La Rosa-Soto

## CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon:

U.S. Attorney
Efile.dkt.gc2@usdoj.gov

Respectfully submitted,

DATED: June 23, 2008

/s/ Robert R. Hensler
**ROBERT R. HENSLER**
Federal Defenders of San Diego, Inc.
Attorneys for Pedro De La Rosa-Soto

**ROBERT R. HENSSLER, JR.**
California State Bar No. 216165
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: robert_hensler@fd.org

Attorneys for Pedro De La Rosa-Soto

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PEDRO DE LA ROSA-SOTO,<br><br>Defendant. | ) | Case No. 08CR2031-H<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** |

**I.**

**INTRODUCTION**

The following statement of facts is based, in part, on the complaint filed in this case. Mr. De La Rosa-Soto does not accept this statement of facts as his own, and reserves the right to take a contrary position at motion hearings and trial. Mr. De La Rosa-Soto reserves the right to challenge the truth and accuracy of these facts in any subsequent pleadings or during any further proceedings.

On April 13, 2008, at approximately 10:00 p.m., United States Border Patrol agents arrested Mr. De La Rosa-Soto near the Tecate, California, Port of Entry. Mr. De La Rosa-Soto was initially questioned without being given Miranda warnings. Subsequently, Mr. De La Rosa-Soto was advised he had a right to contact the Mexican consulate and apparently was questioned again without Miranda warnings. Then, at approximately 11:35 a.m., on April 14, 2008, ***more than 13 hours after his arrest***, Mr. De La Rosa-Soto was

//

advised that his Administrative Rights would no longer apply because he was being charged criminally. Mr. De La Rosa-Soto was then advised of his Miranda rights and questioned for a third time.

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Defendant moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

(1) The Defendant's Statements. The government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements. See also United States v. Bailleaux, 685 F.2d 1105, 1113-1114 (9th Cir. 1982).

(2) Arrest Reports, Notes and Dispatch Tapes. Defendant also specifically requests the government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding the defendant's arrest and any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A), Fed. R. Crim. P. 16(a)(1)(B), and Brady v. Maryland, 373 U.S. 83 (1963). The government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(E), Fed. R. Crim. P. 26.2, and United States v. Riley, 189 F.3d 802, 806-808 (9th Cir. 1999). Preservation of rough notes is requested, whether or not the government deems them discoverable.

(3) Brady Material. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

(4) Any Information That May Result in a Lower Sentence Under The Guidelines. The government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963).

(5) The Defendant's Prior Record. The defendant requests disclosure of all alleged prior criminal convictions and law enforcement contacts, if any. Fed. R. Crim. P. 16(a)(1)(D).

(6) Any Proposed 404(b) Evidence. To the extent that there is any such evidence, the government must produce evidence of prior similar acts under Fed. R. Evid. 404(b) and "shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. See United States v. Vega, 188 F. 3d 1150, 1154-1155 (9th Cir. 1999). The defendant requests that such notice be given three weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) Evidence Seized. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(D).

(8) Request for Preservation of Evidence. The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody or care of the government and which relate to the arrest or the events leading to the arrest in this case be preserved.

(9) Henthorn Material. The defendant requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case, and produce to him any exculpatory information and impeachment material at least two weeks prior to trial and one week prior to the motion hearing. See Kyles v. Whitley, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); see also United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered

to personally conduct examination of records; appropriate government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); United States v. Herring, 83 F.3d 1120 (9th Cir. 1996) (accord). In addition, the defendant requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an in camera inspection.

(10) Tangible Objects. The defendant requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). **Specifically, defendant requests copies of his immigration file as well as any recordings of his alleged prior removal.**

(11) Expert Witnesses. Defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). Defendant requests the notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any expert. See Kumho v. Carmichael Tire Co., 526 U.S. 137, 119 S.Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

(12) Impeachment Evidence. The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. See Fed. R. Evid. 608, 609 and 613; Brady v. Maryland, 373 U.S. 83 (1963); United States v. Strifler, 851 F.2d 1197, 1201-1202 (9th Cir. 1988); Thomas v. United States, 343 F.2d 49, 53-54 (9th Cir. 1965).

//

//

(13) Evidence of Criminal Investigation of Any Government Witness. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(14) Evidence of Bias or Motive to Lie. Defendant requests any evidence that any prospective Government witness is biased or prejudiced against Defendant, or has a motive to falsify or distort his or her testimony. Pennsylvania v. Ritchie, 480 U.S. 39, 57-58 (1987); United States v. Strifler, 851 F.2d 1197, 1201-1202 (9th Cir. 1988).

(15) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. See United States v. Strifler, 851 F.2d 1197, 1201-1202 (9th Cir. 1988).

(16) Witness Addresses. The defendant requests the name and last known address of each prospective government witness. See United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense counsel has equal right to talk to witnesses). The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness. United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).

(17) Name of Witnesses Favorable to the Defendant. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged.

(18) Statements Relevant to the Defense. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert. United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982). This includes all statements by percipient witnesses.

(19) Jencks Act Material. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at trial to allow the defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under

section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act. See also United States v. Riley, 189 F.3d 802, 806-808 (9th Cir. 1999). Defendant requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays for defense counsel to properly use any Jencks statements and prepare for cross-examination.

(20) Giglio Information & Agreements Between the Government and Witnesses. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment.

(21) Agreements Between the Government and Witnesses. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(22) Informants and Cooperating Witnesses. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against the defendant. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(23) Bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

(24) Personnel Records of Government Officers Involved in the Arrest. Defendant requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Defendant. See Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

(25) Training of Relevant Law Enforcement Officers. Defendant requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (United States Customs Service, Border Patrol, DHS, Imperial Beach Sheriff's Department, etc.) to their employees regarding: (1) the informing of suspects of their Constitutional rights; (2) the questioning of suspects and witnesses.

(26) Residual Request. The defendant intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. The defendant requests that the government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## III.

## THE COURT MUST SUPPRESS MR. DE LA ROSA-SOTO'S STATEMENTS UNDER THE FIFTH AMENDMENT

### A. Introduction

Mr. De La Rosa-Soto's alleged statements in the field and his recorded statements taken over 13 hours after his arrest should be suppressed for failure to comply with Miranda, violation of the McNabb-Mallory rule, and involuntariness. Mr. De La Rosa-Soto's alleged statements in the field must be suppressed because he was in custody at the time he was questioned and had not been advised of his Miranda rights. And, Mr. De La Rosa-Soto's recorded statements, taken ***over 13 hours later*** must also be suppressed. Although the agents read Mr. De La Rosa-Soto his rights prior to the questioning, the rights were insufficient to dissipate the taint of the inconsistent administrative rights that were previously read to him or the fact that his prior statements were elicited without the benefit of Miranda warnings. In addition to the inadequacy of the

//

warnings themselves, this Court should also suppress the statements based on the time that elapsed prior to the interrogation.

**B. The Agents Failed to Comply with *Miranda* or the Safe Harbor Rule.**

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966).[1] Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Id. See Orozco v. Texas, 394 U.S. 324, 327 (1969).

Once a person is in custody, Miranda warnings must be given prior to any interrogation. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his or her "critical" rights. United States v. Bland, 908 F.2d 471, 474 (9th Cir. 1990). In order for the warning to be valid, the combination or the wording of its warnings cannot be affirmatively misleading. United States v. San Juan Cruz, 314 F.3d 384, 387 (9th Cir. 2003). The warning must be clear and not susceptible to equivocation. Id. (vacating illegal entry conviction where defendant was advised of his administrative rights from an I-826 form and later advised of his Miranda rights). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. Miranda, 384 U.S. at 474; see also Edwards v. Arizona, 451 U.S. 484 (1981).

**1. Field Statements**

Mr. De La Rosa-Soto was in custody at the time of the alleged questioning as he had been deprived of his freedom by the agents. Mr. De La Rosa-Soto was not provided Miranda warnings prior to this questioning. Therefore, the Court should suppress any statements made by Mr. De La Rosa-Soto in the field.

//

//

//

---

[1] In Dickerson v. United States, 530 U.S. 428, 120 S. Ct. 2326 (2000), the Supreme Court held that Miranda rights are no longer merely prophylactic, but are of constitutional dimension. Id. at 2336 ("we conclude that Miranda announced a constitutional rule").

**2. Recorded Statements Taken Over *Thirteen* Hours After Arrest**

a. Violation of *United States v. San Juan Cruz.*

In United States v. San Juan Cruz, 314 F.3d 384, 387-88 (9th 2002), two different and conflicting sets of warning were read to the defendant. First, Mr. San Juan was informed of his Administrative Rights pursuant to 8 C.F.R. § 287.3. Id. Mr. San Juan was then advised, under Miranda, that if he could not afford an attorney, one would be appointed for him. Id. The Ninth Circuit unambiguously held:

> [T]o be valid, a Miranda warning must convey *clearly* to the arrested party that he or she possesses the right to have an attorney present prior to and during questioning. The warning also must make clear that if the arrested party would like to retain an attorney but cannot afford one, the Government is obligated to appoint an attorney for free.

Id. at 388 (citation omitted, emphasis in original). The Ninth Circuit determined that the two sets of warnings were confusing because the defendant could not reasonably ascertain from the warnings provided whether he could or could not retain the services of an attorney for free. Id. To rectify the situation, the interrogating agent should have clarified his statements or advised San Juan to disregard the Administrative Rights in favor of those read to him under Miranda. Id. at 389.

According to discovery, a second statement was taken from Mr. De La Rosa-Soto after advising him of his rights under Miranda. This final statement was recorded on a DVD and produced in discovery. The DVD provided by the government demonstrates that the agents did not clearly tell Mr. De La Rosa-Soto that his administrative rights no longer applied and that he was entitled to an attorney during this round of interrogation. Because the agents failed to clearly advise Mr. De La Rosa-Soto that his administrative rights no longer applied, his statements must be suppressed.

b. Mr. De La Rosa-Soto's Statements Should Be Suppressed Because the Agents Violated *Missouri v. Seibert.*

The statements must also be suppressed because, assuming the Miranda warnings were effectively given, they were withheld until after Mr. De La Rosa-Soto had already been questioned and confessed. "The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as Miranda requires." Missouri v. Seibert, 124 S.Ct. 2601, 2610 (2004) (plurality). "By any objective measure" where interrogators withhold warnings until after interrogation succeeds in eliciting a confession, "the warnings will be ineffective in

preparing a suspect for successive interrogation, close in time and similar in content." Id. Unless the warnings could place a suspect who has just been interrogated in a position to make an informed choice to stop talking even if he had talked earlier, "there is no practical justification for accepting the formal warnings as compliance with Miranda, or for treating the second stage of interrogation as distinct from the first. . ." Id. Thus, "it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because Miranda warnings formally punctuate them in the middle. Id. at 2611.

Here, the agents intentionally questioned Mr. De La Rosa-Soto without the benefit of Miranda warnings, and after he confessed, provided him with Miranda warnings and recorded his statement. Because the agents intentionally questioned Mr. De La Rosa-Soto without reading him his Miranda rights, under Seibert, his later statements after Miranda warnings were provided should be suppressed.

c. Mr. De La Rosa-Soto's Statements Should Be Suppressed Because They Were Obtained Outside the Safe-Harbor Period and He Was Not Arraigned Without Unnecessary Delay.

Mr. De La Rosa-Soto's post-arrest statements must be suppressed because they were taken more than 13 hours after his arrest and the government failed to arraign him without unnecessary delay as required under Fed. R. Crim. P. 5(a)(1)(A).

Rule 5(a)(1)(A) of the Federal Rules of Criminal Procedure provides that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer . . . ." Fed. R. Crim. P. 5(a)(1)(A). The "[p]rovisions related to Rule 5(a) contemplate a procedure that allows arresting officers little more leeway than the interval between arrest and the ordinary administrative steps required to bring a suspect before the nearest magistrate." Mallory v. United States, 354 U.S. 449, 453 (1957). The police must "arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined." Id. at 454. The arrested person may be booked, "[b]ut he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt." Id.

"If a United States magistrate is not reasonably available under Rule 5(a), the arrested person shall be brought before a state or local judicial officer . . . and such officer shall inform the person of the rights

specified in rule 5(c) and shall authorize the release of the arrested person . . ." Fed. R. Crim. P. 5, Advisory Committee Notes, 1972 Amendment. The language of this provision "reflects the view that time is of the essence." See Fed. R. Crim. P. 5, Advisory Committee Notes, 2002 Amendments.

"Legislation such as this requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard -- not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society." Mallory, 354 U.S. at 452 (quoting McNabb v. United States, 318 U.S. 332, 342-44 (1943)). In order to adequately enforce the requirement of prompt arraignment, it is necessary to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention. Id. at 453.

In Mallory, for example, the Supreme Court found that "the circumstances of [the] case preclude a holding that arraignment was without unnecessary delay." Id. at 455. There, the defendant was arrested in the early afternoon, interrogated for approximately a half-hour, detained for an additional four hours, and interrogated again. Id. The defendant was not arraigned until the next morning. Id. at 451. In finding the statements inadmissible due to the unnecessary delay in arraignment, the Supreme Court emphasized that "[i]t is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate . . . ." Id. at 456.

According to reports provided in discovery, Mr. De La Rosa-Soto was arrested on April 13, 2008 around 10:00 p.m. However, he was not interrogated by the agents until approximately 11:35 a.m., on April 14, 2008. Finally, the government waited until April 16, 2008 to arraign Mr. De La Rosa-Soto. As such, he was not taken "without unnecessary delay before a magistrate judge, or before a state or local judicial officer . . . ." as required by Rule 5. Therefore, Mr. De La Rosa-Soto's statements must be suppressed.

Pursuant to 18 U.S.C. § 3501(c), delay in presentment, beyond six hours, requires suppression of any incriminating statements made thereafter. See 18 U.S.C. § 3501(c). "The clear meaning of this provision is that delay alone *permits* suppression when any of these requisites are *not* met." United States v. Perez, 733 F.2d 1026, 1031 (2d Cir. 1984) (emphasis in original). Thus, the Ninth Circuit has held that "there must be circumstances in which delay in arraignment will require suppression of a confession regardless of the voluntariness of the confession." United States v. Alvarez-Sanchez, 975 F.2d 1396, 1401 (9th Cir. 1992),

overruled on other grounds, 511 U.S. 350 (1994) (holding that the exclusionary rule—due to delay in arraignment—does not apply where the person is detained solely on state charges). See also Perez, 733 F.2d at 1031 ("[§] 3501 leaves the *McNabb-Mallory* rule intact with regard to confessions obtained after a six hour delay"); United States v. Robinson, 439 F.2d 553, 563-64 (same).

Because Mr. De La Rosa-Soto was not questioned within the 6 hour safe harbor or promptly arraigned before a magistrate judge or other state or local official, his statements must be suppressed.

d. The Court Should Suppress Mr. De La Rosa-Soto's Recorded Statements as Involuntary.

Even when the procedural safeguards of Miranda have been satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is founded upon an involuntary confession. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964). The government bears the burden of proving that a confession is voluntary. Lego v. Twomey, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, this Court must consider the totality of the circumstances. Schneckloth at 226; see also United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir. 1993). A statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)); see also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

To meet its burden, the government must demonstrate that Mr. De La Rosa-Soto's statement was ***not*** the result of either threats or promises made by the agents, but was made voluntarily. And, it should be noted that ***no law or local court rule relieves the government of its burden*** to prove that Mr. De La Rosa-Soto's statements were voluntary. Indeed, the Ninth Circuit recently confirmed this proposition in United States v. Medina, 524 F. 3d 974 (9th Cir. April 29, 2008). In Medina, the defendant argued that because his co-defendant filed a motion to suppress and the local rule said the District Court did not have to hold an evidentiary hearing, then the speedy trial clock did not toll. Id. at 982-83. The Ninth Circuit disagreed and specifically held that the local rule did not change the fact that this was a motion that ***required*** an evidentiary

//

hearing. *Id.* at 983 ("motions to suppress statements and evidence are of the type that would normally require an evidentiary hearing.") (citing United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986)).

Moreover, delay in interrogating a defendant "can provide the sole basis for a finding of involuntariness, if the delay exceeds six hours." United States v. Manuel, 706 F.2d 908, 913 (9th Cir. 1983). See also United States v. Perez, 733 F.2d 1026, 1031 (2d Cir. 1984) ("delay alone *permits* suppression") (emphasis in original). In United States v. Wilson, the Ninth Circuit stated that "the fact that unreasonable delay, alone, beyond six hours may support a finding of involuntariness suggests that unreasonable delay is the most important factor of all [in the 3501 analysis]." 838 F.2d 1081, 1085 (9th Cir. 1988). Wilson further explains "if unreasonable delay in excess of six hours can itself form the basis for a finding of involuntariness, that same delay may also suggest involuntariness of the Miranda waiver." Id. at 1086. Finally, in Alvarez-Sanchez, 975 F.2d at 1400-01, the Ninth Circuit noted that while delay prior to obtaining a confession may be a basis for finding statements to be involuntary, pre-confession delay (as opposed to pre-arraignment delay) need not be unreasonable to warrant suppression. Because Mr. De La Rosa-Soto's statements were obtained ***over thirteen hours after his arrest***, this Court should find that his Miranda waiver and subsequent statements were involuntary, and thus, inadmissible.

**C. This Court Must Conduct An Evidentiary Hearing**

Accordingly, this Court must conduct an evidentiary hearing to determine whether the government can meet this burden and use Mr. De La Rosa-Soto's statements against him. 18 U.S.C. § 3501; Medina, 524 F. 3d at 983 (motions to suppress statements and evidence "require an evidentiary hearing."). Since "'suppression hearings are often as important as the trial itself,'" these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading. See United States v. Prieto-Villa, 910 F.2d 601, 609-610 (9th Cir. 1990) (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)). Mr. De La Rosa-Soto's statements were made as a result of the coercive tactics employed by the agents. Unless and until the government demonstrates that these statements were made voluntarily, the statements may not be used for any purpose at trial.

//

//

//

## IV.

## THE COURT SHOULD DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY

The indictment in the instant case was returned by the January 2007 grand jury. That grand jury was instructed on January 11, 2007. The instructions to the impaneled grand jury deviate from the instructions at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this district in several ways.[2] First, instructing grand jurors that their singular duty is to determine whether or not probable cause exists and that they have no right to decline to indict when the probable cause standard is satisfied. Second, instructing grand jurors of a non-existent prosecutorial duty to present exculpatory evidence. These instructions compounded by the erroneous instructions and comments to prospective grand jurors during *voir dire* of the grand jury panel, which immediately preceded the instructions. Therefore, the indictment should be dismissed.

## V.

## REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

Mr. De La Rosa-Soto and defense counsel have not received all the discovery in this case. As new information comes to light, the defense may find it necessary to file further motions. Specifically, defense counsel has not yet had the opportunity to view the A-file in this case. Therefore, defense counsel requests the opportunity to file further motions based upon information gained from any further discovery.

//

//

//

//

//

//

---

[2] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. De La Rosa-Soto-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (De La Rosa-Soto-Vargas II); United States v. De La Rosa-Soto-Vargas, 367 F.3d 896 (9th Cir. 2004)(De La Rosa-Soto-Vargas I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam). If the Court or the government request further briefing on this issue, or the transcript from the grand jury proceedings, then it will be provided forthwith.

## VI.

## CONCLUSION

For the reasons stated above, Mr. De La Rosa-Soto respectfully requests that this Court grant the foregoing motions.

Respectfully submitted,

DATED: June 23, 2008

/s/ Robert R. Hensler
**ROBERT R. HENSLER**
Federal Defenders of San Diego, Inc.
Attorneys for Pedro De La Rosa-Soto